IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CADLES OF GRASSY MEADOWS II, L.L.C. by assignment from Olney Savings Association, | § § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 3:06-CV-1542-M |
| DAVID GOLDNER and ROBERT GOLDNER, | § § § § | |
| Defendants. | § | |

## **MEMORANDUM OPINION AND ORDER**

Before the Court is Defendants' Motion for Judgment on the Pleadings, filed November 13, 2006. Upon review of the pleadings, briefs, and applicable law, for the reasons stated below, Defendants' Motion is **GRANTED**.

Background

Plaintiff Cadles of Grassy Meadows II, L.L.C. ("Plaintiff") filed its Original Petition in Texas state court on July 25, 2006. Defendants and New York residents David Goldner and Robert Goldner ("Goldner") removed the action to this Court on August 24, 2006, on the basis of diversity jurisdiction. Since then, Plaintiff has filed an Amended Complaint, in response to which Defendants filed their Second Amended Answer.

According to Plaintiff's Amended Complaint, the facts underlying this action for collection of a debt occurred approximately twenty years ago when Defendants promised to pay

all the debts incurred by Equivest Properties, which signed two notes to Olney Savings Association, the first on July 2, 1985, and the second on January 29, 1988. These notes were both due on December 31, 1988.

Defendants move for judgment on the pleadings on the ground that Plaintiff's claims are barred by the statute of limitations. Plaintiff's claims arose on December 31, 1988, when Defendants allegedly did not fulfill their obligations on the notes.[1]  Since Texas law provides a four-year statute of limitations for suit on a debt, the statute of limitations on Plaintiff's claims ran on December 31, 1992, nearly fourteen years before Plaintiff filed suit. TEX. CIV. PRAC. & REM. CODE § 16.004.

Plaintiff argues that the statute of limitations has not run in this case because a state tolling statute applies. Section 16.063 of the Texas Civil Practice and Remedies Code provides that "[t]he absence from this state of a person against whom a cause of action may be maintained suspends the running of the applicable statute of limitations for the period of the person's absence." Though the general rule is that § 16.063 does not apply to nonresident defendants, the rule is subject to two exceptions. *Jackson v. Speer*, 974 F.2d 676, 679 (5th Cir. 1992). "First, the tolling provision applies to nonresident defendants who were present in the state when they executed a promissory note or otherwise contracted a debt." *Id.*  The tolling provision also applies to "nonresident defendants who were present in the state when the cause of action accrued." *Id.*

Plaintiff argues that since the Defendants incurred these debts in Texas, and have resided

---

[1] Although Plaintiff did not originally issue the notes in this case, Plaintiff owns the right to collect by virtue of a series of assignments of a default judgment, which was entered on November 11, 1994. A Texas state court vacated that judgment in an order issued June 16, 2006.

2

in New York since shortly thereafter, the tolling statute applies and the statute of limitations has not run. Defendants concede that while the tolling statute applies in this case, the statute is unconstitutional under the Commerce Clause of the United States Constitution.[2] The constitutionality of the Texas tolling statute under the Commerce Clause is a matter of first impression.

## Standard

A motion for judgment on the pleadings provides a vehicle for summary adjudication of a claim on the merits after the pleadings are closed, but before trial. FED. R. CIV. P. 12(c); *Hebert Abstract Co., Inc. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir.1990). The court may look only to the pleadings and must accept all facts pleaded therein as true. *St. Paul Fire & Marine Ins. Co. v. Convalescent Servs., Inc.*, 193 F.3d 340, 342 (5th Cir.1999). Judgment on the pleadings is appropriate only if material facts are not in dispute and questions of law are all that remain. *Voest-Alpine Trading USA Corp. v. Bank of China*, 142 F.3d 887, 891 (5th Cir. 1998).

---

[2] The State of Texas, as Intervenor, argues that the record in this case is insufficient for the Court to determine whether § 16.063 applies. However, the Court may only look to the pleadings, not the record, when deciding a Motion for Judgment on the Pleadings and must accept all facts pleaded as true. *St. Paul Fire & Marine Ins. Co. v. Convalescent Servs., Inc.*, 193 F.3d 340, 342 (5th Cir.1999). Since Plaintiff and Defendants plead that § 16.063 applies, the Court must accept that fact as true. In any event, the record does reflect that the Defendants incurred the debts in Texas since they listed an address in Fort Worth, Texas on the Guaranty forms they signed in 1985 and 1988, and the Deed of Trust forms were notarized by a Notary Public of the State of Texas. *See* Exhibits 2, 4–6, Appendix to Plaintiff's Response to Defendants' Motion for Judgment on the Pleadings at 4–6, 17–18, 26, 31–33, 40–42.

Analysis

I.  Dormant Commerce Clause

The Commerce Clause of the United States Constitution provides that "[t]he Congress shall have Power . . . [t]o regulate Commerce . . . among the several States."  Art. I, § 8, cl. 3. The Supreme Court has held that although the Commerce Clause is phrased as a grant of regulatory power to Congress, it has a "negative" or "dormant" aspect that "denies the States the power unjustifiably to discriminate against or burden the interstate flow of articles of commerce." *Oregon Waste Sys,, Inc. v. Dep't of Envtl. Quality of the State of Oregon*, 511 U.S. 93, 98 (1994).  The Supreme Court has adopted a "two-tiered approach to analyzing state economic regulation under the Commerce Clause." *Brown-Forman Distillers Corp. v. New York State Liquor Auth.*, 476 U.S. 573, 578–79 (1986).  "When a state statute directly regulates or discriminates against interstate commerce, or when its effect is to favor in-state economic interests over out-of-state interests, [the Court has] generally struck down the statute without further inquiry." *Id.* at 579. "When, however, a statute has only indirect effects on interstate commerce and regulates evenhandedly, we have examined whether the State's interest is legitimate and whether the burden on interstate commerce clearly exceeds the local benefits." *Id.* (citing *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970)).  The Supreme Court has noted that while "there is no clear line separating the category of state regulation that is virtually *per se* invalid under the Commerce Clause, and the category subject to the *Pike v. Bruce Church* balancing approach . . . [i]n either situation the critical consideration is the overall effect of the statute on both local and interstate activity." *Id.*

II. *Bendix*

The United States Supreme Court struck down an Ohio tolling statute in *Bendix Autolite Corporation v. Midwesco Enterprises, Inc.*, 486 U.S. 888 (1988).  Bendix, a Delaware corporation with its principal place of business in Ohio, sued Midwesco, an Illinois corporation with its principal place of business in Illinois, for breach of contract, claiming that Midwesco had improperly installed a boiler system and that the boiler system did not perform as specified in the contract.  When Midwesco asserted the statute of limitations as a defense, Bendix invoked the Ohio tolling statute, which provided:

> When a cause of action accrues against a person, if he is out of the state, has absconded, or conceals himself, the period of limitation for the commencement of the action . . . does not begin to run until he comes into the state or while he is so absconded or concealed.  After the cause of action accrues if he departs from the state, absconds, or conceals himself, the time of his absence or concealment shall not be computed as any part of a period within which the action must be brought.

OHIO REV. CODE § 2305.15 (Supp. 1987).  Midwesco argued that this statute violated both the Commerce Clause and the Due Process Clause of the Fourteenth Amendment.  The district court dismissed the case, finding that the statute violated the Commerce Clause.  The Court of Appeals for the Sixth Circuit affirmed the district court's dismissal.

Affirming the Sixth Circuit's decision, the Supreme Court noted that "[a]lthough statute of limitations defenses are not a fundamental right, . . . they are an integral part of the legal system and are relied upon to project the liabilities of persons and corporations active in the commercial sphere."  486 U.S. at 893.  The Court therefore held that states "may not withdraw such defenses on conditions repugnant to the Commerce Clause."  *Id.*

Analyzing the Ohio tolling statute under its Commerce Clause analysis, the Court stated

5

that while the statute "might have been held to be a discrimination that invalidates without extended inquiry," it would apply the *Pike* balancing test. *Id.* at 891. The Court found the burden placed on Midwesco to be a significant one, since "[t]o gain the protection of the limitations period, Midwesco would have had to appoint a resident agent for service of process in Ohio and subject itself to the general jurisdiction of the Ohio courts." *Id.* at 892. The Court found that the Ohio statute forced defendants "to choose between exposure to the general jurisdiction of Ohio courts or forfeiture of the limitations defense, remaining subject to suit in Ohio in perpetuity." *Id.* at 893. In assessing the state interest in the tolling statute, the Court held that while it may be more difficult to serve foreign corporate defendants than to serve domestic corporations, "Ohio cannot justify its statute as a means of protecting its residents from corporations who become liable for acts done within the State but later withdraw from the jurisdiction, for it is conceded by all parties that the Ohio long-arm statute would have permitted service on Midwesco through the period of limitations." *Id.* at 894. The Court therefore held that, in the particular case, "the Ohio tolling statute must fall under the Commerce Clause." *Id.*

III. Cases After *Bendix*

In the years since *Bendix*, several other courts have applied the Court's holding to strike down similar tolling statutes, as applied to both corporate and individual defendants. A federal district court considered the constitutionality of the Ohio tolling statute as applied to an individual defendant in *Tesar v. Hallas*, 738 F. Supp. 240 (N.D. Ohio 1990). Clark Hallas had been a reporter for the Cleveland Plain Dealer when Gerald Tesar's claim arose, but had moved to take a new job with the Pittsburgh Press seven months later. Hallas moved for judgment on

6

the pleadings on the basis that the statute of limitations had run on plaintiff's defamation action, which was filed more than two years after Hallas's article was published. The court first addressed the issue of whether Hallas's activities fell under the Commerce Clause, since the Complaint only alleged that "he lived and worked in Cleveland for the Plain Dealer, and then moved to Pennsylvania and began a new job there." 738 F. Supp. at 242. The court found that the law was well settled that "the movement of persons falls within the Commerce Clause." *Id.* (quoting *Edwards v. California*, 314 U.S. 160 (1941)). The court likewise found that "it seems plainly 'unreasonable' for persons who have committed acts they know might be considered tortious to be held hostage until the applicable limitations period expires." *Id.* In applying the *Pike* balancing test as the Court in *Bendix* had done, the district court found that "the prospective individual defendant has an even more draconian choice to make than that presented to the foreign corporation in *Bendix*," since "Hallas would have had to choose between traveling out-of-state and enjoying the protection of the statute of limitations." *Id.* at 242–43. The court also found that, as in *Bendix*, "Tesar would have had no trouble obtaining personal jurisdiction over Hallas via Ohio's long arm statute." *Id.* at 243. The court therefore held that the portion of the statute "which causes automatic tolling for out-of-state persons, over whom the Ohio courts would have had personal jurisdiction and who are not alleged to have fled or concealed their location, is not justified." *Id.*

The next tolling statute to be invalidated under the Commerce Clause was the California tolling statute, which provided that:

> If, when the cause of action accrues against a person, he is out of the State, the action may be commenced within the term herein limited, after his return to the State, and if, after the cause of action accrues, he departs from the State, the time

7

of his absence is not part of the time limited for the commencement of the action. CAL. CODE OF CIVIL PROC. § 351. In *Abramson v. Brownstein*, 897 F.2d 389 (9th Cir. 1990), the court considered a challenge to the tolling statute brought by Joel Brownstein, a Massachusetts resident sued in federal district court in Northern California for allegedly failing to deliver gold coins and currency pursuant to a contract he made with Lewis Abramson, general partner of World Coin Partners. After finding that the tolling statute applied to Brownstein, the court then found that "Brownstein was engaged in interstate commerce when, as a Massachusetts resident, he entered into a sales transaction with Californians Abramson and World [Coin Partners]." 897 F.2d at 392. Since the California statute was non-discriminatory on its face because it treated residents and nonresidents alike, the court applied the *Pike* balancing test, weighing the interest California had in making sure its litigants could bring suit against nonresident defendants against the burden imposed by the statute, namely forcing "a nonresident individual engaged in interstate commerce to choose between being present in California for several years or forfeiture of the limitations defense." *Id.* The court relied on *Bendix* in striking down the statute, finding that "[l]ike the defendant in *Bendix*, the California long arm statute would have permitted service on Brownstein throughout the limitations period." *Id.* at 393.

The New Jersey tolling statute was also held to be unconstitutional under *Bendix*. That statute provided that if a defendant:

> . . . is not a resident of this State when such cause of action accrues . . . or if any corporation or corporate surety not organized under the laws of this State, against whom there is such a cause of action, is not represented in this State by any person or officer upon whom summons or other original process may be served, when such cause of action accrues . . . the time or times during which such person or surety is not residing within this State or such corporation or corporate surety is not so represented within this State shall not be computed as part of the periods of

8

> time within which such action is required to be commenced by the section. The person entitled to any such action may commence the same after the accrual of the cause therefor, within the period of time limited therefor by said section, exclusive of such time or times of nonresidence or nonrepresentation.
>
> A corporation shall be deemed represented for purposes of this section if the corporation has filed with the Secretary of State a notice designating a representative to accept service of process.

N.J. STAT. ANN. § 2A:14-22 (West 1987). This statute applied to the defendant in *Juzwin v. Asbestos Corporation, Ltd.*, 900 F.2d 686 (3d Cir. 1990), since the defendant was a Canadian corporation with no corporate offices or registered agent in New Jersey. The Court of Appeals for the Third Circuit first analyzed the statute under a heightened scrutiny analysis, since the statute applied only to out-of-state defendants and was therefore discriminatory on its face. The court found the statute failed under this analysis since New Jersey offered no reason why its legitimate purpose in "assisting New Jersey citizens to pursue their claims against foreign corporations" could not "be served as well by the adoption of a more narrowly drawn statute" that would toll a statute of limitations when "in spite of diligent efforts, long-arm service cannot be effectuated either because the corporation is beyond the reach of the long-arm rule or because it cannot be found for mail service." 900 F.2d at 690. The court also held that the statute failed under the *Pike* balancing test, since "foreign corporations unrepresented but possibly amenable to long-arm service must make the difficult choice whether to file designations (with uncertain consequences) or forego a potential limitations defense, a burden that neither New Jersey corporations nor foreign corporations registered to do business in New Jersey bear." *Id.* at 691.

The New Jersey Supreme Court considered the tolling statute as applied to an individual nonresident defendant two years later in *Crespo v. Stapf*, 128 N.J. 351 (N.J. 1992). The court

9

first found that "[b]ecause Stapf is a German citizen and his business is located in Germany, the sale of his machine to Crespo's employer constitutes foreign commerce." 128 N.J. at 360. Like the court in *Juzwin*, the New Jersey Supreme Court found that the statute failed under both a heightened scrutiny analysis and the *Pike* balancing test. Considering the burden placed on defendants, the court found that "[r]equiring a person to establish residency, which subjects him or her to the general jurisdiction of state courts, is even more burdensome than requiring a corporation to obtain a certificate to do business or to designate an agent for the service of process." *Id.* at 365.

Both the Court of Appeals for the Eighth Circuit and the North Dakota Supreme Court considered the constitutionality of the North Dakota tolling statute as applied to corporate nonresident defendants. The North Dakota statute provided:

> If any person shall be out of this state at the time a cause of action accrues against him [or her], an action on such cause of action may be commenced in this state at any time within the term limited in this chapter for the bringing of an action on such cause of action after the return of such person into this state. If any person shall depart from and reside out of this state and remain continuously absent therefrom for the space of one year or more after a cause of action shall have accrued against him [or her], the time of his [or her] absence shall not be taken as any part of the time limited for the commencement of an action on such cause of action.

N.D. CENT. CODE § 28-01-32 (repl. 1974).[3] The Eighth Circuit Court of Appeals applied the *Bendix* holding and held that the North Dakota statute was unconstitutional since North Dakota's interest in "assisting its residents in litigating against non-resident defendants, when long-arm

---

[3] This statute was revised in 1989 to provide that the provisions "do not apply if this state's courts have jurisdiction over a person during the person's absence." N.D. CENT. CODE § 28-01-32 (Cum. Supp. 1989). Though their opinions were issued after this revision, the *Bottineau* and *Muller* courts were interpreting the earlier version of the North Dakota statute.

10

service of process is available, cannot justify the imposition of a greater burden on non-residents than residents," which in this case forced "a non-resident defendant to choose between being physically present in the state for the limitations period or forfeiting the statute of limitations defense." *Bottineau Farmers Elevator v. Woodward-Clyde Consultants*, 963 F.2d 1064, 1074 (8th Cir. 1992). Less than a month later, the North Dakota Supreme Court reached the same result in *Muller v. Custom Distributors, Inc.*, 487 N.W.2d 1 (N.D. 1992).

A similar statute in South Carolina was also struck down on the same grounds. In *Guyton v. J.M. Manufacturing, Inc.*, 894 F. Supp. 252 (D. S.C. 1995), the district court considered this statute:

> If when a cause of action shall accrue against any person he shall be out of the State, such action may be commenced within the terms in this chapter respectively limited after the return of such person into this State. And if, after such cause of action shall have accrued, such person shall depart from and reside out of this State or remain continuously absent therefrom for the space of one year or more, the time of his absence shall not be deemed or taken as any part of the time limited for the commencement of such action.

S.C. CODE ANN. § 15-3-30. The court held that *Bendix* "mandate[d] a finding that [the tolling statute] is an impermissible burden on interstate commerce in violation of the Commerce Clause." 894 F. Supp. at 254. The court held:

> Just as the Ohio tolling statute could not be justified as protecting local residents, § 15-3-30 cannot be justified as a means of protecting South Carolina residents from corporations who become liable for acts done in South Carolina but later withdraw from the jurisdiction because the South Carolina long-arm statute would have permitted service on Defendants throughout the period of limitations.

*Id.* at 255.[4]

---

[4] Three years after the *Guyton* opinion, the Supreme Court of South Carolina interpreted the statutory language "out of the State" to describe "a defendant who is beyond the personal jurisdiction and process of the court and not simply a defendant who is physically absent from

11

Finally, the Court of Appeals for the Eighth Circuit affirmed a district court's finding that the Missouri tolling statute is unconstitutional under the Commerce Clause, in *Rademeyer v. Farris*, 284 F.3d 833 (8th Cir. 2002). The statute provided that "if after such cause of action shall have accrued, such person depart from and reside out of this state, the time of his absence shall not be deemed or taken as any part of the time limited for the commencement of such action." MO. REV. STAT. § 516.200. Following *Bendix* and its own ruling in *Bottineau* construing the North Dakota statute, the court held that Missouri's statute was also unconstitutional since the plaintiff could have used Missouri's long-arm statute to bring a timely suit against the defendant.

Every time that a court has considered a tolling statute similar to the one found unconstitutional by the Supreme Court in *Bendix*, the court has struck down the statute as unconstitutional under the Commerce Clause, whether the nonresident defendant be a corporation or an individual, and whether the statute is on its face discriminatory or neutral. In fact, the only cases in which courts have chosen not to extend *Bendix* or have distinguished it in some way have been when the state legislatures or courts have limited the tolling statute to apply only if the plaintiff is unable to effectuate service under a long-arm statute. *See, e.g., Blyth v. Marcus*, 517 S.E.2d 433, 435 (S.C. 1999) (finding that the lower court erred in declaring the state tolling statute unconstitutional under *Bendix* since the Supreme Court of South Carolina had previously held in *Meyer v. Paschal* that the statute did "not toll the statute of limitations when the nonresident defendant is amenable to personal service and the defendant can be brought

---

the State." *Meyer v. Paschal*, 498 S.E.2d 635, 638–39 (S.C. 1998). That court has since applied *Meyer* to find that a lower court erred in finding the state tolling statute unconstitutional under *Bendix*, given its recent interpretation of the law. *Blyth v. Marcus*, 517 S.E.2d 433 (S.C. 1999).

12

within the personal jurisdiction of the courts"); *Hunt v. Enzo Biochem, Inc.*, 471 F. Supp. 2d 390, 404–05 (S.D.N.Y. 2006) (distinguishing *Bendix* because the four states at issue—California, Florida, Massachusetts, and South Carolina—had all prohibited "the use of the tolling provision if the absent defendant is subject to personal jurisdiction in the state during the limitations period").

IV.  The Texas Statute

The Court now turns its attention to the tolling statute in this case, which provides that "[t]he absence from this state of a person against whom a cause of action may be maintained suspends the running of the applicable statute of limitations for the period of the person's absence."  TEX. CIV. PRAC. & REM. CODE § 16.063.  As noted by both parties, this statute has a long history.  The first version of the tolling statute was adopted by the legislature in 1841.  That statute provided:

> That if any person against whom there is or shall be cause of action, is or shall be without the limits of this republic at the time of the accruing of such action, or at any time during which the same might have been maintained, then the person entitled to such action shall be at liberty to bring the same against such person or persons after his or their return to the republic, and the time of such persons' absence shall not be accounted, or taken as a part of the time limited by his act.

Art. 997 § 22 (Act of February 5, 1841).  This language remained largely unchanged until 1985, when the legislature passed the current version of § 16.063.  *See* P.D. Art. 24; Tex. Rev. Civ. Stat. 1879, Art. 3216; Tex. Rev. Civ. Stat. 1895, Art. 3367; Tex. Rev. Civ. Stat. 1911, Art. 5702; Tex. Rev. Civ. Stat. Ann. Art. 5537.

As other courts have done in applying *Bendix* to tolling statutes, this Court first must

13

determine whether the activity in this case constitutes interstate commerce. Plaintiff argues that § 16.063 does not discriminate against out-of-state economic interests because it principally applies to residents and because it only applies to nonresidents if they incur debts while physically present in Texas. In other words, Plaintiff reasons that since Defendants incurred the debt in the state of Texas, that the "commerce" in this case was not "interstate" in character. The economic interests at stake in this case, however, are not only the debt incurred by the Defendants, but also the interstate movement of the Defendants themselves. Like the district court in *Tesar v. Hallas*, this Court notes the well-settled law that "the movement of persons falls within the Commerce Clause." 738 F. Supp. at 242 (quoting *Edwards v. California*, 314 U.S. 160 (1941)). The movement of these Defendants between New York and Texas for the purpose of signing the notes at issue therefore constitutes interstate commerce.

The Court next considers § 16.063 under the two-tiered approach adopted by the Supreme Court. Given that the statute on its face applies both to residents and nonresidents, the Court finds that it is not discriminatory on its face and therefore is not subject to a heightened scrutiny analysis. *Cf. Juzwin v. Asbestos Corporation, Ltd.*, 900 F.2d 686 (3d Cir. 1990) (employing heightened scrutiny analysis because New Jersey statute was discriminatory on its face since it applied only to nonresident defendants).

Therefore, the Court analyzes the statute under the *Pike* balancing test to determine whether Texas's interest in the statute is legitimate and whether the burden on interstate commerce clearly exceeds that interest. The Texas Supreme Court explained Texas's interest in the predecessor to § 16.063 in this way:

But the object of the section was for the protection of domestic creditors. It was

>   to their advantage that their debtors should remain within the limits of the State.
>   And it was intended to protect them from the inconvenience and loss to which
>   they would be exposed by the absence of their debtors and consequent immunity
>   of the latter from process and judgment.  The permanent removal of the debtor
>   would only aggravate the evil and hazard to the creditor.  But whether the removal
>   be permanent or temporary, the return of the debtor is within the range of
>   possibilities and in the contemplation of the law, and when that event does take
>   place, the creditor can claim the advantage intended by the section in suspending
>   the operation of the statute.

*Ayres v. Henderson*, 9 Tex. 539, 1853 WL 4247 at *2 (Tex. 1853).  Despite its vintage, this interest is still considered the rationale for § 16.063.  *See Wyatt v. Lowrance*, 900 S.W.2d 360, 362 (Tex. App.—Houston [14th Dist.] 1995, writ denied) ("Section 16.063 is intended to protect domestic creditors from individuals who enter Texas, contract a debt, and depart from the state and default on the debt.").  This state interest is analogous to rationales given for tolling statutes in other states.  *See, e.g., Bendix Autolite Corp. v. Midwesco Enters., Inc.*, 486 U.S. 888, 894 (1988) (characterizing Ohio's interest in its tolling statute as "protecting its residents from corporations who become liable for acts done within the State but later withdraw from the jurisdiction"); *Bottineau Farmers Elevator v. Woodward-Clyde Consultants*, 963 F.2d 1064, 1074 (8th Cir. 1992) (North Dakota's stated interest of "assisting its residents in litigating against non-resident defendants"); *Juzwin v. Asbestos Corp., Ltd.*, 900 F.2d 686, 690 (3d Cir. 1990) (state interest of "assisting New Jersey citizens to pursue their claims against foreign corporations").

As courts have found in other jurisdictions,[5] this Court also finds that the state cannot

---

[5] The Court rejects Plaintiff's argument that cases from these other jurisdictions are not persuasive since "Texas courts have repeatedly distinguished § 16.063 (and earlier versions) from similar tolling provisions adopted in other states."  *See* Plaintiff's Response at 12.  The cases Plaintiff cites concern two distinctions between Texas's statute and the statutes in certain other states: (1) that Texas's tolling statute in general does not apply to nonresidents, unless the

justify its statute as a means of furthering its interest in protecting domestic creditors given the state's long-arm jurisdiction over nonresidents. *See* TEX. CIV. PRAC. & REM. CODE §§ 17.041 et seq. Plaintiff has served both Defendants in this case with process, presumably by means of Texas's long-arm statute. *See* Plaintiff's Original Petition at 1–2, ¶¶ 3–4; Plaintiff's First Amended Complaint at 1, ¶¶ 2–3.[6] Although the state's interest may have been best served by the tolling statute when it was first passed in 1841, when the state was unable to exert personal jurisdiction over nonresidents when they were not physically present in the state of Texas, that rationale is no longer furthered by the tolling statute given modern personal jurisdiction law.

The Court balances the state's interest in protecting domestic creditors from persons who contract debts in Texas and then leave the state against the burden on interstate commerce imposed by the statute. Section 16.063 suspends the statute of limitations for the period of time that the defendant is out of the state of Texas. For resident defendants, the effects of this statute are minimal since residents typically spend a limited amount of time out of the state, whether for business or for personal reasons. *See, e.g., McStay v. Heady Financial Corp.*, No. 11-02-00014-CV, 2003 WL 21710534, *2–3 (Tex. App.—Eastland 2003, no pet.) (tolling statute of

---

nonresident was in the state of Texas when either the right to sue or the cause of action accrued and (2) that Texas's tolling statute applies even if the defendant is amenable to service by other means. Plaintiff fails to show, however, how § 16.063 is different from the particular tolling statutes struck down by courts in Ohio, California, New Jersey, North Dakota, South Carolina, and Missouri. For these reasons, the Court considers the cases cited in Sections II and III of this Memorandum Opinion and Order as persuasive authority.

[6] The State of Texas, as Intervenor, argues that *Bendix* does not apply here because "the record does not demonstrate whether the Goldners are or have been subject to the Texas long-arm substituted service statute." Intervenor's Brief at 8. Again, the Court must consider not the record but the pleadings. Since Plaintiff has pled that both Defendants have been served with process and are presently before the Court, and because Defendants have so appeared, the Court must accept these pleadings as true.

limitations for the 655 days that the resident defendant spent out of Texas during the four-year limitations period); *Loomis v. Skillerns-Loomis Plaza, Inc.*, 593 S.W.2d 409, 411 (Tex. App.—Dallas 1980, writ ref'd n.r.e.) (finding that the statute of limitations had not run when plaintiff filed suit, since defendant testified that he was out of the state on an average of two days a month, for the four-year limitation period). For nonresident defendants who incur debts in Texas, such as Defendants in this case, however, the effects can be much more onerous. *Dicker v. Binkley*, 555 S.W.2d 495, 497 (Tex. App.—Dallas 1977, writ ref'd n.r.e.) (recognizing that "the practical effect of this holding is to eliminate the defense of limitations in all suits against nonresidents who incur an obligation in Texas and go back to their home state without returning to Texas" since "[i]n such cases, the statute is tolled indefinitely"). There is no allegation in the pleadings that Defendants have returned to Texas since the 1980s, when they incurred these debts. As for these Defendants, then, the statute of limitations on the claims that accrued in December 1988 has been tolled indefinitely.

In *Bendix*, the Supreme Court found that the Ohio tolling statute was invalid under the *Pike* balancing test, holding that the "Ohio statutory scheme thus forces a foreign corporation to choose between exposure to the general jurisdiction of Ohio courts or forfeiture of the limitations defense, remaining subject to suit in Ohio in perpetuity." 486 U.S. at 893. Like the district court in *Tesar v. Hallas*, this Court finds that the choice given to nonresident individual defendants, such as in this case, is even more draconian since the Defendants could not appoint a agent for service of process and therefore had to either stay in Texas for the duration of the statute of limitations or else waive the limitations defense and be subject to suit on the debt forever. The Court finds that this "choice" impermissibly burdens interstate commerce and therefore violates

the Commerce Clause as applied to these individual nonresident Defendants.

Conclusion

For the foregoing reasons, the Court finds that § 16.063 of the Texas Civil Practice and Remedies Code to be unconstitutional under the Commerce Clause as applied to the individual nonresident Defendants in this case.  The Court therefore **GRANTS** Defendants' Motion for Judgment on the Pleadings, finding that this action is barred because Plaintiff failed to file suit within the applicable statute of limitations.

**SO ORDERED.**

**DATED**: June 12, 2007.

_____
**BARBARA M. G. LYNN
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF TEXAS**